UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| EVANGELINA HERRERA GOMEZ,<br><br>   Petitioner,<br><br>   v.<br><br>CAMMILLA WAMSLEY, et al.,<br><br>   Respondents. | CASE NO. 2:25-cv-02642-JNW<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## 1. INTRODUCTION

On December 12, 2025, Immigration and Customs Enforcement ("ICE") arrested and detained Petitioner Evangelina Herrera Gomez, an asylum applicant from Mexico, near her home after she dropped her children off at school. Herrera Gomez petitions for a Writ of Habeas Corpus in response. For the reasons below, the Court GRANTS IN PART Herrera Gomez's petition and ORDERS her immediate release.

## 2. BACKGROUND

Herrera Gomez is a 48-year-old native of Mexico who came to the United States to seek asylum with her husband and three children. The family presented themselves at the border and expressed a fear of return to Mexico. They were detained and later released on orders of release on recognizance ("OREC"s) on September 12, 2023. At the same time, they were issued notices to appear in immigration court for removal proceedings. It is undisputed that the Government failed to file Herrera Gomez's notice to appear with the immigration court, and so no hearing was ever scheduled.

Over two years later, on December 12, 2025, ICE issued a new notice to appear, "encountered" Herrera Gomez near her home, and arrested her. ICE claims that Herrera Gomez failed to update her home address in accordance with the terms of her OREC. As Herrera Gomez points out, however, her OREC provides that she must get written permission before changing her address "from the immigration officer listed above," yet no officer is listed on the form.[1] Dkt. No. 7-2 at 2. And notably, ICE knew where she lived because she had previously submitted her home address on her asylum application.

The ICE officer who authorized Herrera Gomez's arrest was "M B748 Olson – SDDO [Supervisory Detention and Deportation Officer]." Dkt. No. 7-3 at 2. The Government provides no documentation showing the revocation of Herrera Gomez's

---

[1] The form indicates that the "Name and Title of Case Officer" is indicated on an "attached OREC G-56" form. But Herrera Gonzalez maintains that she did not receive an OREC G-56 form. And the Government does not submit one.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

OREC. Herrera Gomez is currently detained at the Northwest ICE Processing Center.

### 3. DISCUSSION

**3.1   Legal standard.**

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) ("In state collateral litigation, as well as federal habeas proceedings, it is the petitioner who bears the burden of proving his case."); *see also Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) ("petitioner carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief" when challenging incarceration by the state under 28 U.S.C. §§ 2254). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Demore v. Kim*, 538 U.S. 510, 517 (2003).

**3.2    Herrera Gomez is detained under 8 U.S.C. § 1226(a), not § 1226(b).**

The Government argues that Herrera Gomez is subject to mandatory detention under 8 U.S.C. § 1225(b)(1). That is incorrect; she is subject to detention under 8 U.S.C. § 1226(a).

The Government's argument is belied by the facts. It is undisputed that Herrera Gomez was released on an OREC, which declares that she has been released "[i]n accordance with section 236 of the Immigration and Nationality Act [8 U.S.C. § 1226]." Dkt. No. 7-2 at 2; *see also Sing S. v. Andrews*, No. 1:26-cv-00416-KES-EPG (HC), 2026 WL 184663, at *1 (E.D. Cal. Jan. 23, 2026) (quoting *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007)). Immigration officials thus determined that Herrera Gomez was subject to Section 1226(a)—*not* Section 1225(b)—when they released her on her own recognizance. *See Sing S.*, 2026 WL 184663, at *1.

The Government's argument is also legally flawed. The Supreme Court has drawn a clear distinction between Sections 1225 and 1226. Section 1225 "applies primarily to aliens seeking entry into the United States," while Section 1226 governs "the process of arresting and detaining" noncitizens "already in the country." *Jennings v. Rodriguez*, 583 U.S. 281, 287–88 (2018); *see also Ledesma Gonzalez v. Bostock et al.*, Case No. 2:25-cv-01404-JNW-GJL, 2025 WL 2841574, at *3 (W.D. Wash. Oct. 7, 2025) (quoting *Jennings*, 583 U.S. at 287–88). The Ninth Circuit has similarly described Section 1226 as "provid[ing] the general process for arresting and detaining" noncitizens "who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir.

2022). "In sum, U.S. immigration law authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289; *cf. Al Otro Lado v. Wolf*, 952 F.3d 999, 1011–12 (9th Cir. 2020) ("'Arrival' in th[e] context [of Section 1225(b)] should not be considered ephemeral or instantaneous but . . . as a process. An alien apprehended at any stage of this process, whether attempting to enter, at the point of entry, or just having made entry, should be considered an 'arriving alien.'" (quotation omitted)).

This Court has previously rejected the Government's Section 1225(b) argument and does so again here. *See Ledesma Gonzalez*, 2025 WL 2841574, at *3–4 (adopting reasoning in *Rodriguez Vazquez v. Bostock*, No. 3:25-cv-05240-TMC, 2025 WL 2782499 (W.D. Wash. Sept. 30, 2025)). Herrera Gomez was arrested while residing in the United States under an OREC and with the Government's permission, long after she presented herself at the border seeking asylum. *Id.* at *3. The Government did not subject her to mandatory detention under Section 1225(b)(1) when she arrived at the border in 2023; instead, it released her to live in the United States, "pending the outcome of [her] removal proceedings" under Section 1226(a). *Jennings*, 583 U.S. at 289; Dkt. No. 7-2 at 2. Under these circumstances, Herrera Gomez's detention falls within Section 1226(a)'s discretionary detention scheme, not Section 1225(b)'s mandatory detention provisions. *See Ledesma Gonzalez*, 2025 WL 2841574, at *3.

In the alternative, the Court finds that the due process requirements articulated in this order apply regardless of whether Herrera Gomez is detained under Section 1225(b) or 1226(a). *See Flores Torres v. Hermosillo et al.*, Case No. 2:25-cv-02687-LK, 2026 WL 145715, at *2, 7–8 (W.D. Wash. Jan. 20, 2026) (holding that noncitizen detained under Section 1225(b), released under Section 1182(d)(5)(A), and subsequently re-detained had due process right to notice and opportunity to be heard before revocation of release).

**3.3   The Government violated Herrera Gomez's due process rights.**

Courts have repeatedly found that the Government must provide due process to noncitizens before revoking supervised release and re-detaining them. "[T]he revocation of an OREC requires a pre-deprivation hearing to determine if that noncitizen is a flight risk or danger to the community." *Aslan v. Wamsley et al.*, Case No. 2:25-cv-02698-JNW, 2026 WL 238675, at *3 (quotation omitted) (citing *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025) (applying *Mathews v. Eldridge,* 424 U.S. 319, 332 (1976)); *see also, e.g., Tessema v. Bondi,* No. C25-2330-JNW-MLP, 2025 WL 4033288, at *1 (W.D. Wash. Dec. 11, 2025), report and recommendation adopted, No. C25-2330-JNW-MLP, 2026 WL 84922 (W.D. Wash. Jan. 12, 2026); *Pineda v. Chestnut*, No. 1:25-cv-01970-DC-JDP (HC), 2026 WL 25510, at *5 (E.D. Cal. Jan. 5, 2026) ("Although Respondents allege in their opposition that Petitioner repeatedly violated the terms of her release [citation omitted], no neutral arbiter has determined whether those facts show that Petitioner is a flight risk or danger to the community."); *Tesara v. Wamsley*, Case

No. C25-1723-KKE-TLF, 2025 WL 3288295, at *1, *6 (W.D. Wash. Nov. 25, 2025) (even when it alleges supervised release violations, the Government must provide notice and a pre-detention hearing to comply with due process); *Ledesma Gonzalez*, 2025 WL 2841574, at *8–9. And a "post-deprivation hearing[ ] cannot serve as an adequate procedural safeguard because [it occurs] after the fact and [thus] cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

The Government argues that no hearing was required because 8 C.F.R. § 1236.1(c)(9) "specifically provides that a non-citizen's 'release may be revoked at any time.'" Dkt. No. 5 at 6 (quoting 8 C.F.R. § 1236.1(c)(9)). Even if that regulation could excuse due process requirements—and case law holds it cannot—it does not support Herrera Gomez's re-detention under these facts. Section 1236.1(c)(9) authorizes revocation by specific individuals: "the district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, [and] officer in charge (except foreign)[.]" 8 C.F.R. § 1236.1(c)(9) (custody and release procedures). It is undisputed that SDDO Olson signed the "arrest warrant." Dkt. No. 7-4 at 3. SDDOs are not among the officials authorized to revoke supervision under Section 1236.1(c)(9), and the Government offers no evidence that an authorized official decided to revoke Herrera Gomez's OREC. *See United States v. Gemmill*, 535 F.2d 1145, 1152 (9th Cir. 1976) (agency officials not explicitly granted authority in regulation lack authority to act). Section 1236.1(c)(9) is thus inapplicable and does not help the Government establish that its revocation of Herrera Gomez's OREC was lawful.

Finally, the Government argues that if Herrera Gomez's petition is granted, it should not be required to prove that re-detention is appropriate by clear and convincing evidence at any future pre-detention hearing, as Herrera Gomez requests in her petition. Herrera Gomez cites no authority for this evidentiary standard, nor does she address the issue in her traverse. *See generally*, Dkt. No. 8. Because Herrera Gomez has not offered a basis for the Court to impose this standard, the Court declines to do so. To the extent Herrera Gomez seeks a permanent injunction imposing a clear and convincing standard of review for any future pre-detention hearing, that request is denied.

## 4. CONCLUSION

The Petition for Writ of Habeas Corpus is GRANTED IN PART. Dkt. No. 1. The Court ORDERS as follows:

1. Respondents must RELEASE Petitioner from custody immediately, subject to the conditions of her prior OREC.

2. Petitioner's Motion for Temporary Restraining Order is DENIED AS MOOT. Dkt. No. 2.

3. Petitioner may not be re-detained unless (a) Respondents provide Petitioner with written notice of the basis for the proposed re-detention in advance; and (b) an immigration court hearing is held to determine whether detention is appropriate.

4. Petitioner's request for a permanent injunction imposing a clear and convincing standard of review for any future pre-detention hearing is DENIED.

5. Within TWENTY-FOUR (24) hours of this order, Respondents must provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of her release.

6. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the government in immigration habeas actions).

Dated this 3rd day of February, 2026 at 3:52 p.m.

Jamal N. Whitehead
United States District Judge